UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| AMANDA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-39-GSL |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Amanda Johnson's ("Johnson") appeal of the Social Security Administration's Decision dated August 17, 2022 (the "Decision") which found that Johnson was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***Procedural Background***

Johnson filed an application for benefits on June 17, 2020, alleging disability beginning on February 21, 2020. The claim was denied initially and on reconsideration. On June 7, 2022, the parties participated in a video hearing before an ALJ. The ALJ issued an unfavorable decision on August 17, 2022. (R. 15-31). This appeal followed.

*The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Johnson did not engage in substantial gainful activity since February 21, 2020, the alleged onset date. At step two, the ALJ determined that Johnson had the following severe impairments: chronic bilateral low back pain with sciatica; lumbar pars defect;

cervical degenerative disc disease; chronic cervical pain; chronic left wrist pain; persistent depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder. (R. 18). The ALJ further found that Johnson had the non-severe impairments of dysmenorrhea and obesity. (R. 18-19).

At step three, the ALJ found that Johnson did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)". (R. 19). At step four, the ALJ found that Johnson had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: frequent handling with the left upper extremity; able climb ramps and stairs frequently, climb ladders, ropes, or scaffolds frequently, balance frequently, stoop frequently, kneel frequently, crouch frequently, crawl frequently; simple, routine and repetitive tasks that are not performed at a fast production rate pace, such as that found in assembly-line work; no more than frequent interactions with supervisors and co-workers and only occasional interactions with the public.

(R. 22).

Also at step four, the ALJ found that Johnson is unable to perform any past relevant work. (R. 29). However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Johnson can perform. (R. 29). Thus, the ALJ ruled that Johnson was not disabled, as defined in the Social Security Act. (R. 30).

### *The ALJ's Evaluation of the Mental Impairment Listings*

Johnson has a history of mental impairments due to a variety of issues including anxiety, panic attacks, hypervigilance, concentration issues, obsessive and intrusive thoughts, unstable

relationships, impulsivity, agitation, hopelessness/helplessness, social isolation, inadequate life skills, lack of coping skills, and mood swings. (R. 300-309, 315, 318, 321, 324). Johnson received treatment at Riggs Community Health Center and Valley Oaks Health (R. 81, 308). Johnson underwent ongoing mental health treatment consisting of weekly individual psychotherapy, community supported housing, life skills training, and individual case management services. (R. 752, 759). Johnson was approved for four hours of life skills training per week with a case manager, through Valley Oaks Health. The case manager supported Johnson by transporting her to and from medical appointments, accompanying her and assisting her with purchases at the store, and maintaining community supported housing and food stamps. (R. 752).

The ALJ evaluated Johnson's mental impairments under Listings 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related disorders). The ALJ held that Johnson's mental impairments, considered singly and in combination, failed to meet or medically equal the criteria of the Listings. (R. 20). The ALJ noted that to satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. (R. 20). The "paragraph B" areas of functioning are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. Here, the ALJ found that Johnson had a mild limitation in understanding, remembering or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting or maintaining pace, and a mild limitation in adapting or managing oneself. (R. 20-21).

Johnson makes a brief argument that the ALJ erred in his analysis of Johnson's ability to

understand, remember or apply information. (Opening at 15, Reply at 3). The ALJ found that:

> In understanding, remembering or applying information, the claimant has a mild limitation. As mentioned earlier, the claimant has complained of memory loss (See e.g., Exhibit 2F, pages 26-29). The claimant's primary care provider, Mr. Asare, noted the claimant to have mild memory loss on some of his examinations and a Mini Mental Status Examination score of 26 (Exhibits 2F, page 29, 6F, pages 19-20, and 13F, page 15). On other occasions, he reported that the claimant's memory was normal (Exhibits 2F, pages 9-10 and 6F, page 7). He referred the claimant for a CT scan of the brain, and, as noted earlier, this was normal (Exhibit 9F, pages 12-13). When the claimant was seen for a consultative examination with James Ascough, Ph.D., H.S.P.P. at the request of the Social Security Administration on December 28, 2020, she was able to do five digits forward and four backwards (Exhibit 4F, page 6). For short-term memory, she was asked to retain umbrella, lamp, and car and later recalled lamp and car (Id.). For long term memory, she was asked to name the last four presidents: "Obama ...father and son…son and I think the father…Bush." (Id.). She could name no others (Id.). She was able to complete the usual calculation problems and serial sevens but worked quite slowly (Id.). For information, she missed questions but could answer a range, and this resulted in a low average scaled score of 8 (Id.). Her speech was relevant, coherent, and logical (Id.). She appeared to be processing at a low average level (Id.).

(R. 20).

Johnson contends that the ALJ erred by failing to credit evidence that she required repeated directions. Johnson has not provided a citation to the record to support this argument, and the Court has not found any reference to needing repeated directions in the record. Even if such evidence exists, this would not compel a finding of a greater limitation in this area of functioning. The Court notes here that it does not re-weigh the evidence and the Court will not substitute its judgment for that of the ALJ's. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). The Court will only remand an ALJ's findings with respect to the Listings when the record compels a contrary result. *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010). Thus, there is no error on this point.

With respect to the criteria of "interacting with others", Johnson argues that the ALJ "minimizes symptoms of isolative behavior, irritability, anger and agitation by focusing his discussion of abilities to react more appropriately in the supportive clinical setting, or shopping with her case manager." (Opening at 15, Reply at 2). Johnson claims that the ALJ failed to address the level of support she was receiving in assessing her ability to function independently. (Reply at 2-3).

In his Decision, the ALJ stated:

> In interacting with others, the claimant has a moderate limitation. The claimant testified that she had difficulty with social anxiety when she worked at Olive Garden. She testified that she experiences panic attacks frequently when around a lot of people or loud noises. She endorsed panic attacks to her treatment providers on some occasions, reporting one "unmanageable" attack per month (Exhibit 7F, page 80 and 8F, page 12). She also endorsed isolation and not leaving her house unless absolutely necessary (See e.g., Exhibit 12F, pages 1, 98). She presented as irritable, angry, and/or agitated during several therapy and case management sessions, often in the context of discussing conflict with her ex-husband and daughter (See e.g., Exhibit 7F, pages 74, 90, 12F, pages 109, 115 and 13F, page 9). However, the claimant also exhibited pleasant, cooperative, and/or appropriate behavior on several occasions (See e.g., Exhibit 7F, pages 32, 39, 48, 76, 78, 12F, page 23, and 13F, page 9). For example, the claimant had no difficulty cooperating or interacting during the consultative examination with Dr. Ascough (Exhibit 4F, page 6). During a case management group in November 2021, the claimant was engaged in the session and interacted appropriately with other clients (Exhibit 12F, page 23). In January 2022, the claimant told her case manager that she liked to socialize in group because it decreased some of her symptoms (Exhibit 12F, page 94). In April 2022, the claimant's case manager observed that the claimant saw an old co-worker while they were shopping at Walmart and was very friendly with them (Exhibit 12F, page 113). In May 2022, the case manager observed that the claimant was nice to Taco Bell staff when working out an issue with being charged twice (Exhibit 12F, page 122). The claimant has reported being able to leave her home for tasks such as shopping, using public transportation, and working part-time in restaurants (See Exhibit 3E, 4F, 8F, page 30, 12F, page

> 40, and hearing record). While she testified that she no longer takes the bus, she attributed this primarily to pain with sitting on the bus due to her back condition as opposed to any social anxiety.

(R. 20-21).

Johnson insists she has a "marked" limitation in this area, rather than a "moderate" limitation. A "marked" limitation would require a showing that her functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. Listing 12.01(F)(2)(d). Johnson has not cited any evidence that would tend to show that her ability to interact with others was severely limited. As the ALJ's analysis of Johnson's ability to interact with others is supported by the substantial evidence he cited in the Decision, this Court finds no error.

Johnson directs the bulk of her briefs to her argument that the ALJ erred in his assessment of Johnson's ability to adapt and manage herself. This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.[1]

The ALJ found that:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant reported poor ability to cope with stressors to her treatment providers at times (See e.g., Exhibit 1F, page 18). She reported a history of suicide attempts (See e.g., Exhibit

---

[1] https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_04

> 12F, page 1). However, her psychologically-based symptoms have been managed conservatively with case management services and outpatient therapy with social workers. She has not required more intensive treatment such as psychiatric hospitalization or day treatment. She has declined psychotropic medication recommended by her therapist, her primary care doctor, and a neurologist (See Exhibit 8F, page 9). Outside of the clinical setting, the claimant lives alone in an apartment (See hearing record). She testified that she has joint legal custody of her daughter, who was age 17 at the time of the claimant's hearing. The claimant reported no problems with her own personal care (Exhibit 3E, page 6). She reported being able to perform tasks such as taking care of her daughter during visitation time, taking care of dogs, preparing meals, washing dishes, cleaning, mowing, shopping, using public transportation, handling bank accounts, and reading on the internet (Exhibits 3E and 4F, page 7).

(R. 21).

Johnson makes much of the fact that she received case management services, equating this with a severe impairment in the ability to manage herself. Johnson states that "referral to mental health treatment through the court system due to her volatility and symptoms, and then receipt of a grant of full services including housing assistance, therapy, and a case manager throughout the entire time the claim has pended, indicated marked limitation." (Reply at 3). However, the ALJ fully considered the fact that Johnson had the assistance of a case manager, and refers to this fact throughout the Decision. Notably, no doctor opined that Johnson had greater limitations in the area of adapting and managing herself. (R. 28). Johnson objects to the fact that the ALJ characterized her treatment as conservative, claiming that case management services are only granted to persons who have a high level of need due to severe mental illness. Johnson cites to 440 IAC 9-2-10 in support of her argument. That section, however, merely states that "[c]ase management services shall be based on the abilities, needs, resources, and desires of each consumer....". There is no indication that the services are meted out only to persons with serious mental illnesses. Likewise,

the ALJ's observation that Johnson has not needed more intensive treatment such as psychiatric hospitalization or day treatment is correct. Moreover, Johnson herself reported that she could manage herself quite well with tasks including using public transportation and handling bank accounts. Thus, as there is substantial evidence that Johnson did not have a marked limitation in adapting and managing herself, this Court finds no error and declines Johnson's invitation to re-weigh the evidence.

### *The ALJ's Assessment of Johnson's RFC*

Johnson contends that the ALJ failed to include language in the RFC to accommodate her moderate limitation in concentration, persisting, or maintaining pace (CPP). With respect to CPP the ALJ stated:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Distractibility, impulsivity, and/or poor frustration tolerance were observed during some of the claimant's therapy and case management sessions (See e.g., Exhibit 7F, pages 48, 74, 12F, page 57). However, Mr. Asare reported that the claimant's attention span and concentration were normal on his examinations (Exhibit 2F, pages 9-10, 29). As noted above, the claimant was able to do five digits forward and four backwards during the psychological consultative examination (Exhibit 4F, page 6). She was able to complete the usual calculation problems and serial sevens but worked quite slowly (Id.). She appeared to be processing at a low average level (Id.). The claimant did not describe problems with concentration or completing tasks in her function report (Exhibit 3E, page 10). She reported being able to finish things she started such as a conversation, chores, reading, or watching a movie (Id.).

(R. 21).

To account for Johnson's moderate limitation in CPP the ALJ, in the RFC, limited her to "simple, routine and repetitive tasks that are not performed at a fast production-rate pace, such as

that found in assembly-line work". Johnson claims that these restrictions are too vague and generic, making the RFC unsupported by substantial evidence. However, the case law on point supports the Commissioner's position that the RFC is sufficient. *See e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (holding RFC accommodated claimant's moderate limitation in concentration, persistence, or pace where limited to simple, repetitive tasks at a consistent pace); *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (affirming RFC for simple routine tasks, judgment limited to simple work related decisions, and brief and superficial interaction with coworkers, where the ALJ made specific findings supporting such limitations); *Peeters v. Saul*, 975 F.3d 639, 641-42 (7th Cir. 2020) (finding that an RFC limitation to simple, routine, and repetitive work accommodated Peeters's "[m]oderate limitations in the work setting"); *Urbanek v. Saul*, 796 F. App'x 910, 914-15 (7th Cir. 2019) ("Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms found in the record.'"); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (affirming RFC for simple, routine, repetitive tasks, no fast paced work, simple decisions and occasional changes, and social limitations, because the ALJ "tied the RFC to the evidence in the record").

Thus, clearly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient. Here, the ALJ relied on the evidence showing that Johnson, although processing at a low average level, was able to complete tasks and exhibited normal attention span and concentration in examinations. (Ex. 7F/48, 74; Ex. 12F/57; E. 3E/10). The ALJ then accommodated Johnson's limitations with specific

restrictions in the RFC. No doctor has opined that Johnson had greater limitations than those accounted for in the RFC. Therefore, there is no error.

### *The ALJ's Evaluation of the Medical Opinions*

Johnson asserts that the ALJ erred in his evaluation of the medical opinions. She contends that the ALJ provided an insufficient rationale for finding the opinions of Dr. Ascough and Dr. Bangura unpersuasive. Johnson further claims that the ALJ's finding that the opinion of Wilberforce Asare, A.G.N.P., was "quite vague", and then dismissing it, was error. Johnson also makes a passing reference to the fact that the ALJ did not find the State Agency doctors' opinions persuasive.

#### *1. Dr. Ascough's Opinion*

Johnson was seen for a consultative examination with James Ascough, Ph.D., H.S.P.P., on December 28, 2020. As noted above, during this exam Johnson was able to do five digits forward and four backwards. She recalled two out of four objects after a delay, was able to name two of the last four presidents, could perform calculations at a slow pace, and had a low average scaled score of 8. (R. 20). She also had no difficulty cooperating or interacting during the examination with Dr. Ascough. (R. 21). Dr. Ascough noted that Johnson's presentation suggested a level of persistent depressive disorder, and she cried during the exam. Johnson also appeared anxious answering different questions. (R. 26).

With respect to Dr. Ascough's opinion, the ALJ stated:

> The undersigned has also considered the medical source statement from the consultative psychological examiner, Dr. Ascough (Exhibit 4F, page 8). He stated, "She felt that working full-time is quite difficult in relation to medical problems as well as stresses

> engendered by relationships with co-workers." (Id.). This opinion is not persuasive because it is quite vague and does not provide a function-by-function assessment of the claimant's capabilities. It was not well-supported by explanation and appears to rest heavily, if not entirely, on the claimant's own subjective reports. A statement that a claimant is not able to work or able to perform regular or continuing work addresses an issue reserved to the Commissioner and is therefore inherently neither valuable nor persuasive. The undersigned has, however, carefully considered the examination findings in Dr. Ascough's report in assessing the severity of the claimant's impairments and her residual functional capacity.

(R. 28-29).

Johnson argues that this is an insufficient rational for finding the opinion unpersuasive, and claims that the ALJ failed to discuss the "supportability" and "consistency" of the opinion, as required by the regulations.  However, it is clear that the ALJ recited at length the details of Dr. Ascough's examination of Johnson, and then understandably found the very short opinion to be vague.  Also as the opinion did not contain a function-by-function assessment of Johnson's capabilities, there was no way for it to be consistent with the medical evidence.  An ALJ cannot be faulted for not discussing factors in an opinion that are non-existent. The Court finds no error on this point.

### 2. Dr. Bangura's Opinion

On October 28, 2020, Johnson was seen for a consultative examination with Luella Bangura, M.D.  Johnson exhibited tenderness in the cervical and lumbar spine, had a left hand grip of 4/5, and had signs of an unsteady gait.  Johnson was able to walk on her heels and toes without difficulty.  She was able to bend 50 percent of the way.  She was able to squat, and straight leg raising was negative.  Strength was 5/5 in the right arm, right hand, right leg, left arm, and left leg. Sensation was normal to touch and pain in all extremities.  Deep tendon reflexes were symmetric and normal.  There was no evidence of atrophy or rigidity.  Johnson was able to do normal hand

functions and was able to get on and off the examination table without difficulty or assistance. (R. 24). Johnson was fully oriented and her cerebellar functions appeared to be normal. (R. 26).

With respect to Dr. Bangura's opinion, the ALJ stated:

> The consultative physical examiner, Dr. Bangura, commented, "Claimant can still do sitting, hearing, and seeing despite impairments with respect to work related activities. Claimant has mental impairment issues/ problems with: Memory and sustained concentration." (Exhibit 3F, page 5). To the extent this statement even constitutes a medical opinion, it is not persuasive because it is quite vague. Moreover, Dr. Bangura's statement regarding the claimant's mental impairments rests on an assessment of conditions outside his [sic] area of expertise. However, his [sic] statement is not inconsistent with the above residual functional capacity. The undersigned has carefully considered the objective examination findings in Dr. Bangura's report in assessing the severity of the claimant's impairments and her residual functional capacity.

(R. 28).

Johnson again claims that the ALJ provided an insufficient rationale for finding this medical opinion unpersuasive. Again, the ALJ was simply stating the facts when he noted the opinion is "vague". The ALJ cannot evaluate what is not there in the first place. The Court finds no error.

### 3. NP Asare's Opinion

Johnson's primary care provider, NP Asare, diagnosed Johnson with chronic bilateral low back pain with sciatica, cervical degenerative disc disease, chronic cervical pain, and chronic left wrist pain. (R. 18). As noted earlier, NP Asare also noted that Johnson has mild memory loss in some exams, but other times her memory was normal. Likewise her attention span and concentration were normal. (R. 21, 26, 27). During a September 29, 2020 exam, Johnson exhibited cervical spine and lumbar spine tenderness and pain to the left wrist with movement. However, sensation, fine motor skills, balance, gait, and coordination were all normal. (R. 23). During exams on January 12, 2021, May 12, 2021, and May 9, 2022, Johnson again exhibited spine tenderness,

mild pain with motion of the thoracic and lumbar spine, and with straight leg raise. Deep tendon reflexes were symmetrically decreased. Neurovascular exam including reflexes, sensation, and pulses were within normal limits. Gait, balance coordination, and fine motor skills were normal. Shoulders, elbows, hands and hips were normal to inspection and had normal range of motion. (R. 24).

With respect to NP Asare's opinion, the ALJ stated:

> Mr. Asare's opinion is likewise not persuasive. In a letter dated January 12, 2021, Mr. Asare stated that the claimant would benefit from not standing for extended periods of time (Exhibit 11F). This opinion is not persuasive because it is quite vague and does not define extended periods. Moreover, Mr. Asare provided almost no explanation of the medical evidence relied on in support of his conclusion (Id.). To the extent he meant to suggest any standing limitations more restrictive than those in the above residual functional capacity, his assessment is inconsistent with other substantial evidence of record, including the limited treatment pursued for the claimant's musculoskeletal pain and her physical examination findings typically reflecting a normal gait and normal strength and sensation in the lower extremities.

(R. 29).

Johnson makes the argument that if the ALJ felt that NP Asare's opinion was vague, then he should have re-contacted NP Asare for clarification. However, the case law does not support Johnson's argument. It was Johnson's duty to submit evidence supporting her claim of disability. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244-45 (7th Cir. 2023); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Johnson has not shown that there was a "significant omission" in the record, and thus there is no basis to remand on this point. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).

### 4. *Opinions of the State Agency Consultants*

The State Agency medical consultant, Dr. M. Brill, M.D., found that Johnson was capable of light work with no more than occasional handling with the left upper extremity and no more than

frequent climbing, balancing, stooping, kneeling, crouching or crawling. The ALJ found this opinion unpersuasive "because it is inconsistent with other substantial evidence of record, particularly the dearth of treatment for left wrist symptoms and minimal upper extremity examination abnormalities....". (R. 28). The ALJ further found that Dr. Brill's findings were otherwise persuasive "because they were supported by explanation and are generally consistent with the record as a whole." (R. 28).

The State Agency psychological consultant, Dr. J. Sands, M.D., found that Johnson's mental impairments were not severe and that she had mild limitations in all of the "paragraph B" criteria. The ALJ held that these findings were consistent with the finding that Johnson is not disabled. However, the ALJ did not find Dr. Sand's findings to be persuasive "because they are inconsistent with other substantial evidence of record. [Johnson's] mental health treatment records are consistent with some problems interacting with others, particularly the public, and handling more than simple, routine tasks." (R. 28).

Although Johnson lumps the State Agency consultant's opinions in with her arguments concerning the opinions of the other doctors (Opening at 22), she fails to make any specific argument concerning these opinions. As the ALJ's evaluation of these opinions is supported by substantial evidence, there is no error.

Johnson also makes the argument that since the ALJ found all of the opinions of the mental health doctors to be unpersuasive, the ALJ "played doctor" in reaching her conclusions. Johnson seems to imply that the ALJ crafted the RFC limitations out of thin air. This is far from the case. The ALJ carefully considered the medical record in this case, painstakingly detailing Johnson's various visits to the different doctors. (R. 18-29). While the ALJ did not find any of the mental

health doctors' opinions to be persuasive, he clearly discussed the medical evidence and explained the basis for his conclusions which derived from that evidence. This is all that is required. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). As there is no basis for remand, the Decision will be affirmed.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on March 27, 2024.

/s/ Gretchen S. Lund
GRETCHEN S. LUND, JUDGE
UNITED STATES DISTRICT COURT